May it please the court, my name is Candace Kane and I represent David Bagdy. I would ask the provision for three minutes for rebuttal. Granted. The district court had no legal basis to violate Mr. Bagdy or revoke his supervisory lease because he was not in default on payment of restitution. By the plain terms of the judgment, Mr. Bagdy was required to make periodic payments of at least 10% of his gross monthly income towards the balance of restitution, which he did and more. I think the defense has a rather myopic view of what the judgment of sentence says. The judgment of sentence obligated him to pay the entire amount of restitution as a condition of supervised release, did it not? Yes. The term that you want us to focus on is merely the payment schedule, but the obligation, the broader obligation is also a condition, a specific decretal portion of the judgment of sentence, is it not? Yes, your honor. So is the question here really one of whether Mr. Bagdy could dissipate his assets to the extent that he was unable to pay the entire judgment of restitution, which was a condition of his supervised release? Your honor, the entire amount was a condition of his supervised release, however, it was not due all at once. The statutes provide... Could be, couldn't it? What about 3664K? Yes, he could have required payment... The district court at any time, even on its own motion, could have called the parties together and ordered a completely different schedule of payment. In fact, could have ordered that the entire balance of this inheritance of Mr. Bagdy's was paid toward restitution. Couldn't the district court have done that under 3664K? I think that, your honor, that that particular statute, I don't think that he could make a change until he had defaulted. Where does it say that? And he could have had a hearing. Where does it say that? The statute refers to material changes in circumstance. It doesn't, it doesn't indicate what you just said. Well, Mr. Bagdy did each month report what his expenses were. Were they accurate? Was that even accurate, though? Were his expense reports actually accurate? They were substantially accurate. They were technically accurate in terms of ATMs, which he carefully kept under $500, didn't he? Which is, doesn't the probation office require reporting 500 or over? Is that the rule? That's right. The form requires him to list the ones over $500. So all these ATM withdrawals that were under $500 were just coincidentally that amount? But at any point, the probation could have requested or even maybe they already had his bank records or any number of records that would have shown what other things he spent money on other than what was listed. He was bound to be accurate for these $500 regardless of whether probation wanted supplementation. There was a difference between $90,000 reported over a certain period of time and $160,000 they actually spent. So can you say that he was actually accurate in his reporting to probation? Wouldn't that alone have been sufficient as a basis to have violated his conditions? Well, he was not violated for that condition. You have actually conceded on the record, haven't you, that one of Mr. Bagdee's primary obligations is restitution? In response to the government's motion to modify, Mr. Bagdee claims to acknowledge, quote, that one of his primary obligations is restitution. So what were his other primary obligations at the time? Looking over the expenses, it looks like his local florist was one of them. Well, he also had, as a condition of probation, supporting his family and other dependents. Was he under any court orders for supporting his former spouse or his daughter? That was not part of the record, but his daughter, she had just started college, so I think we can infer that she was still a minor. But under 3572, Your Honor, restitution is due immediately unless the judge orders payment on a schedule. Here, the payment was on a schedule, and he did receive money, and he reported it right away to probation, and he wrote a check in March for $41,000, which was almost 10% of the total amount of the inheritance. Is your position that all he had to do was pay 10% of his inheritance pursuant to the condition that talks about no less than 10%, which was a bottom, not a top? Right. Our position is that he had to pay at least 10%. Anything more than that is rather vague. We don't know, is 25% enough, is 15% enough? I want to understand, though, your position and the implications of your position. Your position is that everything he did was not violative of his restitution obligation. Is that correct? It is not in violation of the restitution obligation to pay. And that is why. Why is he not in violation of his general obligation to pay restitution and to pay all restitution? He did pay restitution. He paid restitution while he was in prison. 50% while in prison. He paid restitution when he was at renewal, and furthermore, he paid substantially more than 10% of his inheritance towards restitution. Initially, he paid $100,000 approximately, which is more than 10%. And then after the court took the remaining $50,000, you know, he's paid $150,000 of a $434,000 restitution. What if Mr. Bagby, on the day he received his entire inheritance, and I understand he received, what, $25,000 or something initially and then the balance later? I forget how much, but the total inheritance was what? $411,000? $434,000. $434,000. Under the position that you have taken, he would not be in violation of this order per your position if the day of that inheritance he had squandered all of it except for 10% and remitted 10% to the probation office. Your Honor, I think that... That's consistent with your position, right? To focus on the spending rather than what he actually did in response to the court order is kind of, you know, it's not really where the focus should be. I understand you don't want the focus there, but shouldn't the focus be on whether or not there is in the law an obligation of good faith not to dissipate assets so that that dissipation would frustrate a court in its efforts to see that restitution, as ordered pursuant to a sentence, is paid in full? The good faith comes in after you determine whether the defendant is in default, and here he was not in default in paying restitution. He paid more than 10%, and the good faith would come in if he couldn't pay or did not pay. Then you look at whether he did not pay and whether that was a good faith reason, like he lost his job, or whether, as you suggest, he just was holding on to it. What if the district court, instead of the way this all came up with this sort of vague motion to do something in the interest of justice, and the government filed another motion, there's nothing from probation that I could see in the record. What if the district court, after being notified of the spending, says, I'm going to issue an order to show cause while you're not in contempt of my restitution obligation, a big number, and not focused on the payment plan? Wouldn't that be a basis upon which that court could have found him in violation? Because the district court, and I just want to give you a little background of why I ask that question. In the opinion that this court issued in affirming the original sentence and conviction, there is a recitation of a delay between plea and sentence, presumably to allow for restitution to be paid pre-sentence. Now we fast forward to post-release from incarceration, receipt of this big chunk of money, months pass, same kind of thing, no payments are made. If the district court simply had said, I'm finding that you appear to be in contempt of your restitution obligation, wouldn't that be a basis upon which that court could have found him in violation of the restitution obligation, not the payment plan, not condition two in this judgment? Well, I believe the payment plan is part and parcel of the restitution order. It was not just restitution, $566,000 restitution. It was modified and under the statute became the judgment when the court said you must pay no less than 10%. This is not a situation where it is just simply the restitution order. So I think that while it's true he owed that amount of money, his restitution obligation was what was stated in the judgment. That is that he'd make payments periodically of not less than 10%, which he did. And in fact, he paid more. What about the dissipation of all these assets, though? Isn't that tantamount to placing himself in a position we could not make that restitution obligation, therefore willfully non-complying? No. And we look at 3614? The way the restitution order is written, that it's 10% of his monthly income, he is paying that. He is making those payments. So really the spending is not relevant. It's a red herring. Let me stop you there, Ms. Cain, because let me go back to 3664K. And the way you framed your argument in the briefing was making this a due process case. Without getting into whether it's a due process issue or whether through constitutional avoidance we ought to just be talking about whether it's a violation of 32.1 or not, I'll defer. But the very last sentence of 3664K says, That's the notification of a material change in the defendant's economic circumstances. A material change in the defendant's economic circumstances, which I would assume you would agree occurred here with the inheritance. Upon receiving the notification, the court may, on its own motion or the motion of any party, including the victim, adjust the payment schedule or require immediate payment in full as the interests of justice require. That's what the court can do. That's what the court is enabled statutorily to do. This statute is notice to the world that the court can do that. As the sentencing order was notice to the defendant of what his obligations were. If we were to follow your line, which is simply to focus on the payment plan, and that's your focus, that's your argument. But you would have us ignore and have us conclude that there is no good faith obligation not to dissipate. Then there would be nothing there to stop your client from again spending a whole amount on the day of his receipt so as to frustrate this direction of Congress as to what a court can do with respect to supervision. That can't be right, can it? Well, Congress also provides for restitution orders to specify that if a person has a windfall such as a lottery winning or an inheritance, that that can be taken into account in a judgment based on that particular instruction. But if it's squandered first, the court doesn't have any opportunity to take that into account, does it? No, I'm talking about it being in the judgment itself. The court could put in the judgment that the defendant, if he comes across an inheritance or a lottery winning, that a certain percentage or all of it or whatever. You think not less than 10% doesn't implicitly say that? That it can always be more than 10%? You think this statute doesn't tell the world that under a material change in economic circumstances, the court might order immediate payment in full of the restitution? I know what the court perhaps would want and what the government would want. But when you look at the judgment itself, it says payment of not less than 10%. What else would it be? Is it 15%? Is 25% enough? And the defendant was making these payments. Probation never violated him. Probation had records that anyone could have seen. And I think that... And probation and everyone else was rather strung along during the course of seven continuances, during which, as I understand the record, the parties were negotiating. Is that accurate? Yes, I believe so. Why would Mr. Bagdy want to negotiate at all if all he owes is 10%? What was there to negotiate? Well, they were talking about a settlement. He could move on with his life. I mean, there's lots of reasons why people want to negotiate and put things behind them. But in this case, during that time that there were negotiations, all the government had to do was call up the probation officer and ask about the payments. All right. We have run over time. We'll, of course, have you back on rebuttal. Ms. Cain would like to hear from Mr. Kokos at this point. Thank you. Thank you. May it please the court, AUSA Donovan Kokos on behalf of the United States. Through his fraud, David Bagdy bankrupted 87-year-old Joe Sullivan, costing the family business it had taken 30 years to build. And for this, Bagdy was sent to prison and ordered to pay a stipulated amount of restitution of $566,000. While Bagdy was in prison, he inherited over $400,000 from a wealthy aunt. And we learned this for the first time about nine months after he was released to supervision. Probation found out about it earlier, though. Right. There was a lack of communication here between probation and the U.S. Attorney's Office. Probation was not telling us what it knew when it knew it correct. But as soon as we did learn this, we did two things. We filed a motion under 18 U.S.C. 3664K, which I'll call a K motion. And we sat down with Bagdy and his attorney, who for some reason was the FPD, even though he's not indigent technically anymore. That question has been in the back of my mind about a $434,000 inheritance in the presence of the Federal Public Defender's Office. So we sit down with Bagdy and his attorney and we obtain Bagdy's promise not to dissipate the inheritance pending a hearing on our K motion. By the way, this is my, and you won't have to give up your time for this, Mr. Kokos, but this is my error in not having announced at the outset that the panel grants the motion to open the e-mails. So they are part of the record for our purposes. Thank you. I appreciate that. So we obtain Bagdy's promise not to dissipate the inheritance pending a hearing on our K motion. And then in addition, Bagdy's attorney makes a commitment to ensure that Bagdy keeps his promise. As you can see from the e-mails, he's assuring us very late in the proceedings that Bagdy's not dissipating his inheritance. So after seven months of continuances, and we think he's not dissipating it because we've got probation whose job it is to supervise him, and Bagdy's attorney who has covenanted to supervise the supervisors essentially, we roll into the hearing and Bagdy announces he's dissipated all but about $50,000 of it. And at that K hearing, we then launch into a discussion of what can be done. Can supervision be revoked? After the hearing, we investigate to determine how this could have happened. And we discover in the course of investigating the violation of his restitution obligations, we discover that the way he's been able to accomplish this is through a second violation, namely a violation of the condition at page 40 of this appendix, which required him to make full and complete disclosures to probation. Why didn't either the government or probation, if that's the practice in your district, bring a petition for a violation of that? Because your adversary's briefing really focused on what did I violate? Right. And why didn't anybody bring that up? Well, I don't know why probation didn't act. It almost seems like probation wasn't reading his reports. It wasn't getting his bank statements. It wasn't reading his reports. Then why didn't the government ask for that? Because that seems to be the real contention in the writings is notice. What did I violate so I can defend? But, Your Honor, so here's what happens. If you look at our written pleading, at page 65 to 66, we allege the restitution violation. At page 73, we allege, by the way, the way he accomplished this was not making full and complete reports to probation. I can just back you up. When you say we allege the restitution violation, you're focused on the big nut, not the payment plan. Am I correct? Well, we're focused on the big nut, but we argued them in tandem. I think you have to read the two provisions in peri materia. But there's not technically a default or a delinquency here if we're only looking at the payments, right? There doesn't have to be, Your Honor. First of all, let me back up. Yeah, there is because he never paid 10% of the $25,000 in advance he got back in October of 2011. For the next several months, I think he paid maybe $600 total out of I don't know what money, but he didn't pay that amount. But in a way, that's neither here nor there, and here's why. A restitution order under Title 18-3663A, which is what we got here under the Mandatory Victims Restitutions Act, results in a lien in favor of the government on all of the defendant's assets pursuant to 3613C. That's enforceable through subsection F of the same statute, which refers you to 3664M1A2. That statute says courts can use all available and reasonable means to enforce an order of restitution. Now the question becomes, does there need to be a default? The answer is no. But enforcement doesn't do any good here once he's dissipated everything, right? It doesn't give us the remedy we want. Well, do we need to be talking about remedy at this point? What about this question as to whether or not there is an implied duty of good faith on the part of Mr. Bagdy? That is, a duty of good faith that would preclude him from dissipating assets that ought primarily to be devoted to the payment of his restitution obligation. And in fact, I believe I'm correct, that Judge Sircone used language of good faith at the time he found the violation. He did, and there's more than an implied duty, Your Honor, because the last statute I would cite, remember, M1A2 says all available and reasonable means can be used. Look at 3614B1, I think it is. That one says courts can revoke supervision for violation of a defendant's restitution obligations when the defendant is either in default of his payment plan or fails to make bona fide or good faith efforts to pay his restitution obligation. Well, it talks about when he is in default on a payment. It's not clear to me whether a payment there refers to the at least 10% under the payment schedule, which really sounds more to me like that than it would the payment of the lump sum obligation. But that's why, Your Honor, you have to read, and we urge the court at page 117 of this record, to read the two provisions together because the payment plan for the gross monthly income, or GMI, is a four. The ceiling is all the way up to $566,000. And that condition at page 42 of this appendix says any portion of restitution left owing at the time he gets out of prison shall become a condition of supervision. It doesn't say he has to be in default of it. When would your adversary have been on notice in the district court that there was a good faith obligation and that there was reliance on 3614? Well, I'd say, first of all, way back in the beginning when we sit down with him and we say, and he agrees not to do so. The fact that he would agree not to do so if he thinks his obligation tops out at 10%. But his agreement can't create a legal obligation out there in the law. It may create a contractual obligation on his part, but it can't create an overall obligation of good faith for people similarly situated. It can be evidence of bad faith. But I agree with you. I don't think it creates an obligation of good faith for purposes of this. So what about the question of the import of 3664K? That making available to the district court the opportunity to, even on its own motion, order a party to pay a greater amount based upon a material change in economic circumstances or the entire amount. Doesn't that at least reflect implicitly a belief on Congress' part that the funds that are the subject of that material economic change will be available for purposes of meeting such an order? I think so, Your Honor. We certainly assume that. Bakke certainly assumed that. Or he wouldn't have been paying more than 10%. He wouldn't have been agreeing not to dissipate. He wouldn't have been concealing the fact that he was dissipating. I mean, all of this is strong circumstantial evidence, anyway, that he knew exactly what Your Honor is saying about the scope of the K motion, and yet he deliberately thwarted the court's ability to give us the full remedy to which we were entitled anyway. You did have an ability. You've been a bit critical of the probation office here in terms of communication with the U.S. Attorney's Office. But once you became aware of this, you would have had an ability to have an attachment of those funds, as opposed to relying upon some person convicted of fraud and relying on his word that he's not going to dissipate. You could have taken action to preserve those assets. Your Honor, I believe we could have. And I dropped a footnote about this in which I cite the Roush case from Texas. Now, here's the problem. This is only after I started researching the matter. And I asked myself, well, you know, this says any asset, by this I mean 3664N, says that any asset a defendant requires while under incarceration is basically ours and we can garnish it. So I thought, well, when he inherits this under New York law, is this now technically something he's acquired during his imprisonment? And I think you can make the strong argument to that effect. But please keep in mind we're dealing with a victim who's 87 years old. We spoke with him about this. For him, a bird in the hand is worth two in the bush. Would he rather have the $200,000 we were trying to get bagged into agreeing to pay, even though we could, through the fullness of time and years of court proceedings, maybe get it all? But would the fact that the judgment is a lien on all of the defendant's property be a basis for freezing those assets, freezing the inheritance, at the point in time when we become aware of it? We didn't interpret the K motion that way. And if you look at the Roush case, it doesn't. It indicates that we were perhaps right in being reticent in just garnishing the asset. If we had to do it over again, knowing what we knew now would be much more likely. What about contempt? How come that wasn't done? Why are we going through this avenue of this K motion that you've characterized The two sets of motions we have where the district court judge is telling your colleague on motion number one, I'm not sure there's really a violation of supervisory lease there. Help me out. You knew that there was the, I keep calling it the big nut, the $500,000-plus. Why didn't you just seek contempt? Because, again, back to your answer, his big focus here is notice. He didn't tell me what I violated. And I don't know why the trial lawyer said didn't seek contempt. That would have been a natural way to go, although I don't know of cases that say a court can toss, it can revoke a defendant's supervision for contempt of an order the court hasn't issued yet. But the restitution judgment was out. Right. Well, I suppose that's right. And I think that one of the remedies by statute includes seeking contempt. Yeah, that might have been a route to go. But am I wrong that your office was effectively in a cooperation mode with the defense over this period of time that the motion is pending and continuances are granted? We thought we were in cooperation. So, I mean, it wouldn't make any sense during that period of time or would have been inconsistent during that period of time to seek a contempt citation if what you're trying to do is work out an agreement. No, no. But as I interpreted Judge Schwartz's questions, I think it's after we realize he has dissipated it and now we ask ourselves what remedies do we have, why didn't we seek contempt sanctions? And the candid answer is, I don't know. The counsel is understanding my question correctly. And so, but here's the issue. I mean, I know they're saying that they didn't understand the basis for this. The problem is if you look at the FPD's response to our written motion, they understood our motion clearly because they denied that he had violated any restitution provisions at pages 106 to 108. And then at 109, he even separately denies that Bagdy had failed to make full and complete disclosures to probation. So we understood both of these were in play. Both of these were argued at the hearing. And Bagdy is a college graduate who is getting an MBA at Joe Sullivan's unwitting expense. I mean, Bagdy understood what was going on here. I would say just since I'm running low, a little low on time, the other route the court could take, it occurs to me as I'm standing here, is if you don't find that good faith is a component of supervised release, and it's hard after Bearden to see how that's possible. But if you don't find it. Bearden is a pretty sensitive format case, but certainly its language would seem to suggest that there's a good faith obligation. Yes, Your Honor. And I've seen other cases in other circuits, and I think an unpublished one in this one from last fall, where the court said there's a good faith obligation to get a job to pay restitution. There's a good faith obligation to- And Bearden says that. And Bearden says that. And there's a good faith obligation to participate in mandatory drug testing. The commonality between and among those cases is that there's an implicit element of cooperation here. We have to assume he's cooperating with us. And so to use your example, but tweak it a little bit, what if he had called us on Monday and said, I've got this inheritance, and we said, great, come to our office, and we'll talk about, we'll file a K motion, but in the meantime, don't dissipate it. The next day, he shows up to our office and said, well, I had a wild time in Atlantic City. I lost most of the money. Now, would he have complied with the letter of his obligation to- That really goes to the question I wanted to ask you before you leave obligation of good faith. And that is, if there is not an obligation of good faith not to dissipate personal assets that would otherwise be available to liquidate a restitution obligation, then is there anything to prevent the defendant who realizes a windfall from suddenly going out and dissipating the money like that, in fact, doing it in this case, just so long as 10% has been withheld to make the periodic payment? There's nothing to prevent it except his moral compass. And if he's a defendant in the first place on supervision, we know where his moral compass is generally. So, no, there isn't. That's why I think there has to be an implicit good faith. But even if the court didn't want to go there, we did, at page 73, we allege pretty clearly the separate violation of his obligation to make true disclosures to probation. He denied having made false disclosures at page 109, I think, but we offered the evidence of it. The bank statements and the reports to probation are irreconcilable. He left off like 40-some-odd transactions for things like jewelry and flowers and artwork and et cetera. So it's your position that the record is clear enough that he was on notice of that violation, had an opportunity to defend against it, in fact, denied it. The government offered evidence and he had a chance to attack it. Not only that, Your Honor, yes, and not only that, but at page 114, he sticked to the authenticity of all those documents. Am I correct that most of the ATM withdrawals were under $500 and that $500 is the reporting amount required by the probation office? They were, but several of those ATM withdrawals were from different ATMs on the same days. So sometimes he would take out $1,200 and $400 increments, et cetera. But really, what got our Irish up, so to speak, was when we look and he said, I won't dissipate this, won't spend it on anything but the necessaries, and what happens, he's spending it on thousands of dollars of flowers and art and dining out and electronics. There's no way you could reconcile that with any good faith obligation in my house. We have, and we have that in the record. Thank you very much. Thank you. Ms. King. The first thing I'd like to say is that this judgment is not a payment plan. It is a judgment, and its words mean something, and the words were that he made payments periodically based on his monthly gross income of at least 10%. Whatever you can disagree with about what happened, you can't use that to put someone in prison when, in fact, they have not defaulted on restitution. They haven't violated the judgment. How do you respond to Mr. Kokas's representation, as you just described, that before the district court there was an opportunity and notice that he was not accurate in his disclosures to probation. Evidence was offered on that subject. The stipulation your adversaries represented was to the authenticity of his documents. He had a chance to be on notice of that potential violation, defend against it. Why isn't that sufficient for us to find there had been a violation and affirm? That allegation wasn't made clearly at all. What I believe the government is talking about is their representation in a petition to request the supervisory lease violation hearing. They pointed out these expenditures, but they never said that he, they never alleged he was being untruthful. That is a violation. They were using it to support their argument that he had a lack of good faith. So I don't believe that that could be notice, adequate notice. Wouldn't we need the district court finding, the district judge's finding, that that was the specific provision or specific condition that had been violated? I'm sorry, I missed the first part. Wouldn't we need the district judge's determination that the specific condition of providing full and complete disclosure? Absolutely, right. And the judge made no such finding. And there was not good notice or adequate notice. The other thing is that when you talk about 3663A, you're talking about a lien, and that's a civil proceeding, and you can't default somebody criminally and put them in jail based on a civil procedure. The other thing is that when you look at 3572, it says that the restitution order is a lump sum, and it's due all at once unless it's been modified. And here it was modified. And I would ask the court not to lose sight of the fact that even though it may find what Mr. Bagley did disagreeable or you may not agree with how he handled things. I'd say that's putting it mildly. But this is a judgment of a court, and it can't be taken lightly. And I don't think Bearden applies at all. Bearden, we're talking about a poor defendant who could not pay, and then the question becomes, is it a good faith reason they could not pay? And that's what Bearden is about. It's not about looking at. It's actually what Bearden is about. But Bearden clearly has language that may be interpreted to suggest that there is a good faith duty here when it talks about an obligation to obtain employment and pursue other courses that may assure payment of a restitution obligation. Well, then I'd like to direct the court, if I may. I see the light's on. We're out of time. Give me 10 seconds. All right. 3613A. It says, upon a finding that the defendant is in default on payment of restitution, the court may, and then it lists the various things that a court may do. The key here is that first the defendant must be in default. And on page 70 of the appendix, it's in the government's petition for a hearing, they actually cite by mistake to 3663, but they quote from that statute by mistake. Really, the statute is 3613A, and it clearly says first the default and then you look at the other factors. Why did the defendant default? Was it a good faith reason or a bad faith reason? We understand your argument. Thank you, Ms. Cain. Thank you to both of you for your very helpful arguments in this rather unusual case. And we will take a 10-minute recess at this time. Maybe we won't take a 10-minute recess at this time, but we'll find our way out by going this way. Yeah, alternate.